IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| XIAO CHEN LIN, ) | |
| ID # 08242-043, ) | |
| Movant, ) | |
| ) | No. 3:19-CV-263-M-BH |
| vs. ) | No. 3:16-CR-270-M(1) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is the movant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 1, 2019 (doc. 2). Based on the relevant findings and applicable law, the motion should be **DENIED** with prejudice.

### I.   BACKGROUND

Xiao Chen Lin (Movant) challenges his federal conviction and sentence in Cause No. 3:16-CR-270-M(1).  The respondent is the United States of America (Government).

**A.   Conviction and Sentencing**

Movant was charged by criminal complaint with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on April 22, 2016, while on supervised release in Case No. 1:06-CR-109(01) from the United States District Court for the Southern District of Mississippi. (*See* doc. 1.)[2]  On June 21, 2016, he was charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One).  (*See* doc. 16.)  He pled guilty to Count One of the indictment on September 6, 2016.  (*See* docs. 25, 59.)

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:16-CR-270-M(1).

During his rearraignment, Movant acknowledged under oath that (1) he understood he was under oath and could be prosecuted for perjury or making a false statement if he gave any false answers; (2) he had discussed with his counsel the charges against him, the matter of sentencing, and how the United States Sentencing Guidelines (Sentencing Guidelines) might apply in his case; (3) he had the right to plead not guilty, have a full jury trial, be presumed innocent with no obligation to speak at trial or present evidence, and cross-examine the Government's witnesses; (4) he had seen, read, and understood the indictment in his case; (5) he committed each of the essential elements of Count One; (6) he was fully satisfied with the advice and counsel his attorney had given him in the case; (7) no one had made any promise or assurance to him to induce him to plead guilty; (8) no one mentally, physically, or in any other way attempted to force him to plead guilty; (9) he understood that by pleading guilty, he would be deprived of civil rights, such as the right to vote, to hold public office, to serve on a jury, or to possess a firearm; and (10) he understood that he was subject to a maximum penalty of 10 years' imprisonment, a $250,000 fine, or twice any pecuniary gain to him or loss to a victim, three years of supervised release, a $100 special assessment, restitution, and costs of incarceration and imprisonment. (*See* doc. 59 at 2, 4-18.)[3]

On December 15, 2016, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) based on the 2016 United States Sentencing Guidelines Manual. (*See* doc. 31-1 at ¶ 39.) It determined that Movant had two previous felony convictions for crimes of violence: (1) assault in the first degree in Case No. 00092-2001 in the New York County Supreme Court in New York, New York, when he was 16 years old (New York conviction); and (2) arson in Case No. 1:06-CR-109-01, in the United States District Court for the Southern District of Mississippi, Gulfport Division. (*See id.* at ¶¶ 40, 55-56.) Applying U.S.S.G. §2K2.1(a)(1), the

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

USPO calculated a base offense level of 26 based on Movant's two prior felony convictions and a semiautomatic firearm recovered from his residence in connection with the pending criminal case. (*See id.* at ¶ 40.) Three levels were added for the quantity of firearms recovered from Movant, four levels were added for his role as a getaway driver in a related burglary, four levels were added for his leadership role in the burglary, and two levels were added for the use of minors based on his role in the burglary. (*See id.* at ¶¶ 41, 44, 46-47.) The USPO also found applicable additional increases of one level under § 2K2.1(b)(1)(B) for the quantity of firearms recovered from Movant, two levels under § 2K2.1(b)(4)(A) because several of the firearms were stolen, and four levels under § 2K2.1(b)(4)(B) for a firearm with an obliterated serial number. (*See id.* at ¶¶ 41-43.) Because the cumulative offense level under U.S.S.G. § 2K2.1(b)(4) was capped at 29, however, these additional increases were not added to the offense level. (*See id.*) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 36. (*See id.* at ¶¶ 51-53.) Based on a criminal history category of IV and an offense level of 36, the resulting guideline range was 262-327 months. (*See id.* at ¶ 85.) Because 120 months was the statutory maximum for the offense, it became the guideline sentence. (*See id.*)

The USPO submitted an addendum to the PSR on December 16, 2016, in which it corrected its assessment of the total applicable enhancements. (*See* doc. 32-1.) The correction did not affect the guideline computations. (*See id.*) The addendum also included a paragraph clarifying that Movant's sentence could be imposed to run concurrently, partially concurrently, or consecutively, to the undischarged sentence in Case No. 1:06-CR-109-01 for which he was on supervised release. (*See id.*)

On August 30, 2017, Movant's counsel withdrew from the case due to a conflict of interest, and Movant was appointed new counsel. (*See* docs. 42, 45-46.) On September 11, 2017, Movant's

new counsel objected to the PSR on the ground that the enhancements for his role in the related burglary were unsupported by reliable evidence, and requested a downward variance from the recommended sentencing guideline range. (*See* doc. 47.) The USPO issued a second addendum to the PSR on September 12, 2017, addressing Movant's objections. (*See* doc. 48-1.) It declined to make any changes based on Movant's objections. (*See id.*)

At Movant's initial sentencing hearing on September 13, 2017, the Court heard arguments about the applicability of 10 levels of enhancements based on Movant's alleged involvement in the related burglary. (*See* doc. 31-1, at ¶¶ 44, 46-47; doc. 67.) The sentencing hearing was continued to allow Movant's counsel to brief an additional challenge to these enhancements. (*See* doc. 67 at 62-64.) At the continuation of the sentencing hearing on September 26, 2017, the Government agreed not to pursue the 10 levels of enhancements related to Movant's alleged involvement in the burglary. (*See* doc. 68 at 3.) The Court accepted the agreement and did not consider the enhancements related to the burglary, assuming for purposes of sentencing that Movant was not involved in the burglary. (*See id.* at 3-4, 17, 24.) With the agreement, Movant's offense level was found to be 26, his criminal history category was IV, and his applicable guideline range was 92 to 115 months. (*See id.* at 4.)

Movant's counsel argued and presented evidence for a downward departure from the sentencing guidelines based on the disparity of the sentences imposed on Francisco Perez (Perez) and another defendant relative to Movant, with particular focus on Perez's sentence. (*See* doc. 67 at 6, 50-51; doc. 68 at 4-9, 16-18.) Counsel argued that Perez was responsible for the same offense conduct as Movant, i.e., possessing firearms from the burglary, and should have been charged with other offenses and sentence enhancements for additional offense conduct, but he instead received a significantly lower sentencing range and sentence. (*See id.*) The Court stated that it was "not

going to sentence [Movant] for a greater charge as if the Government brought a lesser charge," and noted that Perez and Movant "look very different" based on their criminal histories. (doc. 68 at 8,16; *see also id.* at 17.) Perez had prior misdemeanor convictions, while Movant was "a convicted felon with a history of very unsettling and concerning felony convictions that Mr. Perez did not have." (*Id.* at 17.)

Movant was sentenced to 96 months' imprisonment, to be followed by a two-year term of supervised release. (*See* doc. 53 at 2-3; doc. 68 at 28-29.) His sentence was ordered to run consecutively to the sentence imposed in Case No. 3:16-CR-236-M for violation of his supervised release. (*See* doc. 53 at 2.) The United States Court of Appeals for the Fifth Circuit affirmed the judgment on September 12, 2018. *United States v. Lin*, 737 F. App'x 229 (5th Cir. 2018). Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.** **Substantive Claims**

Movant states the following grounds for relief:

(1) Ineffective assistance of counsel due to failure to present valid objection to base offense level under § 2K2.1;

(2) Ineffective assistance of counsel due to failure in objecting to criminal history calculation;

(3) Ineffective assistance of counsel due to failure in filing motion to suppress evidence because of invalid search warrant;

(4) Ineffective assistance of counsel due to failure in effectively presenting available evidence in mitigation.

(No. 3:19-CV-263-M-BH, doc. 2 at 4-8.)[4] On May 1, 2019, the Government filed a response. (*See id.*, doc. 12.) Movant filed a reply on May 21, 2019, and a supplemental reply on June 26, 2019.

---

[4] Movant was not charged or convicted in the underlying criminal case for his alleged involvement in the related burglary, so any disputes or challenges regarding his alleged involvement in the related burglary are not at issue in this habeas action. (*See* No. 3:19-CV-263-M, doc. 12 at 8-10; doc. 19.)

5

(*See id.*, docs. 16, 19.)

## II.     SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III.     INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668, 686

6

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.  **Failure to Object to Base Offense Level**

Movant first argues that counsel was ineffective for failing to object to the base offense level calculation under U.S.S.G. § 2K12.1(a)(1). (*See* No. 3:19-CV-263-M-BH, doc. 2 at 4; doc. 3 at 8.) He contends that his New York conviction was a juvenile adjudication, and he had been on release for over five years before the pending offense, so it should not have been used "to assess

against [him] the Greatest Base Offense Level under USSG § 2K2.1(a)(1)." (doc. 2 at 4.)

Movant has not shown that counsel's performance was deficient; he has not shown that an objection to his base level based on the New York conviction would have succeeded. His conclusory allegations that he was "placed in the wrong sentencing range resulting in a wrong sentence" as a result of counsel's failure to object to his base offense level are insufficient to raise an issue of ineffective assistance of counsel under *Strickland*. (doc. 2 at 4); *see United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). Even assuming for purposes of this motion that the failure to object to the base offense level calculation based on the New York conviction was deficient, however, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice.

Movant's base offense level was calculated as 26 under § 2K2.1(a)(1) because his offense of conviction involved "a semiautomatic firearm that is capable of accepting a large capacity magazine, and [Movant] committed the instant offense subsequent to sustaining at least two felony convictions for crimes of violence." (doc. 31-1 at ¶ 40.) After the applicable enhancements and reductions, as well as the Government's agreement not to pursue 10 levels of enhancements for his alleged involvement in the burglary, Movant's adjusted offense level was 26. (*See* doc. 31-1 at ¶¶ 41-53; doc. 68 at 3-4.) If his New York conviction had not qualified as a second felony conviction for purposes of § 2K2.1(a)(1), his base offense level would have been 22. *See* U.S.S.G. § 2K2.1(a)(3) (stating that a base offense level of 22 applies where the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and the defendant had one

8

prior felony conviction for a crime of violence).[5] A four-level increase for the quantity of firearms involved under § 2K2.1(b)(1)(B) and a four-level increase for a firearm with an obliterated serial number under § 2K2.1(b)(4)(B) would have applied.[6] (*See* doc. 31-1 at ¶¶ 41, 43); U.S.S.G. §§ 2K2.1(b)(1)(B), (b)(4)(B). Because the cumulative offense level under subsections (b)(1) through (b)(4) of § 2K2.1(b) may not exceed 29 for the specific offense characteristics, Movant would have received 7 out of 8 level enhancements, raising his offense level to 29. (*See* doc. 31-1 at ¶¶ 40-41, 43); U.S.S.G. § 2K2.1(b)(4) ("The cumulative offense level determined from the application of subsections (b)(1) through (b)(4) may not exceed level 29 . . . ." After adjusting Movant's offense level to apply the remaining applicable enhancements and reductions, and accounting for the Government's agreement on the 10 levels involving the burglary, his adjusted offense level would remain unchanged at 26. (*See* doc. 31-1 at ¶¶ 44, 46-47, 51-52; doc. 68 at 3-4.)

Because Movant's total offense level after adjustments would be the same regardless of whether his New York conviction was used to determine his base offense level, he has failed to establish the prejudice prong of *Strickland*. *See, e.g.*, *Salinas v. United States*, Nos. 7:14-CV-1004, 7:11-CR-1667-18, 2017 WL 11449111, at *8 (S.D. Tex. Oct. 11, 2017) (finding no prejudice where the movant would have received the same total offense level even if he prevailed on claim supporting a lower base offense level). Accordingly, he has not shown that he is entitled to § 2255 relief on this claim, and it should be denied.

**B.     Failure to Object to Criminal History Calculation**

In his second ground, Movant argues that his counsel was ineffective for failing to object

---

[5] Movant does not challenge the USPO's finding that the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, or that his arson conviction was a felony crime of violence.

[6] Movant was also subject to a two-level increase for stolen firearms under § 2K2.1(b)(4)(A), but because the enhancements of § 2K2.1(b)(4) are applied using "the 'greater of' approach, rather than cumulatively," the higher 4-level enhancement of § 2K2.1(b)(4)(B) applied. (doc. 32-1; *see* doc. 31-1 at ¶¶ 42-43.)

9

to the assessment of 3 points to his criminal history score for his New York conviction. (*See* No. 3:19-CV-263-M-BH, doc. 2 at 5; doc. 3 at 9-10.)  He also claims that his counsel was ineffective for failing to continue investigating his first attorney's inquiries into the classification of his New York conviction as a juvenile adjudication. (*See id.*, doc. 3 at 9.)  He argues that a continued investigation into the New York conviction would have proven that it was a juvenile conviction, thereby resulting in a criminal history category of III, base offense level of 26, and a sentencing guideline range of 78 to 96 months.[7]  (*See* No. 3:19-CV-263-M, doc. 3 at 17.)  Notably, correspondence dated three years after Movant was sentenced indicates that the New York Supreme Court provided incorrect information that Movant was not a juvenile offender in the New York conviction, when in fact he was a juvenile offender.  (*See* doc. 78 at 5-7.)

Counsel has a duty to investigate the charges and evidence against his client. *Strickland*, 466 U.S. at 690-91. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial," however. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the movant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on a failure to investigate." *Gonzalez v. United States*, Civ. A. No. 5:19-CV-145, Crim. A. No. 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

---

[7] The sentencing guidelines range for a criminal history category of III and an offense level of 26 is 78-97 months. *See* U.S.S.G. Ch. 5, Pt.A, Sentencing Table (2016).

The Fifth Circuit recognizes that juvenile convictions can be considered in calculating a defendant's criminal history score under the Sentencing Guidelines. *See United States v. Holland*, 26 F.3d 26, 27-29 (5th Cir. 1994); *United States v. Kee*, 65 F. App'x 509, 509 (5th Cir. 2003). In calculating a criminal history score, § 4A1.2(d) provides:

> (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each sentence;
>
> (2) In any other case,
>
> > (A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
> >
> > (B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(d).

According to the PSR, in 2001, Movant was convicted of assault in the first degree in New York at the age of 16 and was sentenced to 6 years' imprisonment. (*See* doc. 31-1 at ¶ 55.) The PSR listed the conviction as an adult criminal conviction and added three points to his criminal history score. (*See id.*) According to his second attorney, Movant never requested that he investigate the New York conviction to see if it was a juvenile adjudication. (*See* No. 3:19-CV-263-M-BH, doc. 13-1 at 3.) Counsel did, however, review a memorandum prepared by the chief investigator of Movant's first attorney regarding whether the New York conviction was an adult or juvenile conviction. (*See id.*, doc. 13-1 at 4.) He also reviewed the accompanying documents from the investigation, including a Certificate of Disposition Indictment from the New York Supreme Court's CAP Unit for the New York conviction, which did not indicate whether the conviction was an adult or juvenile adjudication, and an email from the head investigator stating

11

that a clerk from the CAP Unit advised him that there was "no notation of a 'youthful offender' listed" for Movant's conviction, and that it was an adult conviction. (*Id.*, doc. 13-1 at 7; *see id.*, doc. 13-1 at 4, 9-10.) Movant's counsel also reviewed the PSR for Movant's 2006 federal conviction in Case No. 1:06-CR-109-01 from the Southern District of Mississippi, which identified the New York conviction as an adult conviction and added 3 points to his criminal history score. (*See id.*, doc. 13-1 at 4, 20.) Based on these records, Movant's counsel determined that the New York conviction was an adult adjudication, and as a result, did not challenge it as a juvenile adjudication. (*See id.*, doc. 13-1 at 4-5.)

In his reply, Movant claims that he provided his second counsel with a handwritten paper "describing what he needed done in the case to include the thorough investigation and gathering of evidence in the New York conviction." (*Id.*, doc. 16 at 5, 33-35.) He also challenges the sufficiency of his counsel's investigation by claiming that his counsel was aware that "New York law holds individuals 16 years of age as minors but for a few exceptions, none which are applicable in [Movant's] case," counsel's reliance on the statement of a New York CPA Unit clerk and the 2006 PSR from the Southern District of Mississippi was misplaced, and it was counsel's "duty to work towards obtaining the necessary documentation to prove that his client had been found to be a 'youthful offender' prohibiting the use of the New York conviction to enhance his federal sentence."[8] (*Id.*, doc. 16 at 5-6.)

Assuming for purposes of this motion that counsel rendered deficient performance by failing to continue investigating the New York conviction and to object to the criminal history

---

[8] Movant also appears to claim that the Government was aware that the use of the New York conviction in the PSR was improper because it did not present documentation showing that it was an adult conviction. (*See* doc. 16 at 6.) Movant's conclusory allegations and speculation regarding are insufficient to state a cognizable claim under § 2255 on this basis. *Woods*, 870 F.2d at n.3.

12

calculation on the basis that it was a juvenile adjudication, Movant has not shown prejudice under *Strickland*.

Even if the PSR should not have assigned criminal history points for the New York conviction, thereby reducing his criminal history score to 5 and establishing a criminal history category of III, and a new sentencing range of 78-97 months, Movant has failed to show a reasonable probability that his sentence would have been lower. Acknowledging the sentencing guideline range of 92-115 months and the Government's agreement to seek a sentence within this range, the Court stated, "I have the authority to sentence you to 120 months, the Government's agreement notwithstanding, and then I have the authority to sentence you in connection with your revocation . . . ." (doc. 68 at 27.) It then imposed a sentence of 96 months, which falls within both the recommended guideline range of 92-115 months and the guideline range of 78-97 months that Movant claims applies, and which is below the statutory maximum. (*See* doc. 53 at 2; doc. 68 at 28-29.) In determining the sentence, the Court "considered the advisory guidelines but sentenced pursuant to the provisions of 18 USC Section 3553(a)." (doc. 54 at 4.)

The Court made clear that it had not limited its consideration to the sentencing guideline range of 92-115 months, but instead assessed Movant's sentence in the context of the statutory maximum of 120 months and the sentencing factors of 18 U.S.C. § 3553(a). (*See id.*; *see* doc. 68 at 27.) Movant has not demonstrated a reasonable probability that his sentence would have been lower but for the alleged deficiency of counsel. *See, e.g.*, *United States v. Lee*, 368 F. App'x 548, 554-55 (holding that there was no resulting prejudice where "the district court made clear that the advisory guidelines range was only a minor factor in determining [the defendant's] sentence . . . . [and] it gave no indication, and [the defendant] fails to show with any certainty, that a lower range would have resulted in a lower sentence."). He has not shown that he is entitled to § 2255 relief,

and this claim should be denied.

**C.     <u>Motion to Suppress</u>**

In his third ground, Movant contends that his first attorney was ineffective for failing to inform Movant that he could file a motion to suppress evidence based on a search warrant unsupported by probable cause, and for failing to file such a motion. (*See* No. 3:19-CV-263-M-BH, doc. 2 at 6-7; doc. 3 at 10-11.)

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson*, 397 U.S. 759 (1970)]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) ("[I]n general, 'once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived,'" including ineffective assistance of counsel claims, although a movant may raise ineffective assistance to the extent that it affected the voluntariness of his plea.) (quoting *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)).

The Court accepted Movant's guilty plea based on a finding that it was knowing and voluntary. (*See* doc. 59 at 2, 4-18, 20.) Because his guilty plea was knowing and voluntary, he waived all of his claims related to the initial appearance and pretrial stages, including his claim of ineffective assistance of counsel for failure to file a motion to suppress based on a Fourth Amendment violation. *See United States v. Sublet*, 211 F. App'x 301, 302 (5th Cir. 2006) ("With respect to his guilty-plea convictions, [the defendant] has waived all non-jurisdictional defects in

14

the proceedings before the district court by entering a valid, unconditional guilty plea. That waiver includes the right to appeal any Fourth Amendment claims." (citations omitted)); *Gresham v. United States*, Nos. 3:14-cv-3589-P, 3:10-cr-267-P-1, 2015 WL 430765, at *4 (N.D. Tex. Feb. 2, 2015) ("The Fifth Circuit has held that a defendant's voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant[,] including putatively unreasonable searches and seizures[.]" (internal citations and quotation marks omitted)).

To the extent Movant claims he would not have pleaded guilty had his attorney advised him that he could have filed a motion to suppress evidence for lack of probable cause to support the search warrant for his apartment, his claim fails because he has not shown that the motion to suppress was meritorious, and that there was a reasonable probability that the outcome of his case would have been different. *See United States v. Alanis*, 88 F. App'x 15, 17 (5th Cir. 2004) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.") (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Probable cause for the issuance of a search warrant "exists where there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Ratliff v. United States*, Nos. MO-10-CV-101, MO-08-CR-123(2), 2011 WL 13286476, at *4 (W.D. Tex. Oct. 28, 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). The evidentiary search warrant relating to Movant described his residence and stated that: (1) he was believed to be concealing firearms stolen in a burglary; (2) he was on federal probation for a firearms-related

offense; (3) he lived near the location where the stolen vehicle used in the burglary was abandoned; (4) he called one of the suspected burglars shortly after the burglary and during the time when the vehicle was being abandoned; and (5) he texted one of the suspected burglars after the media released surveillance of the burglary, expressing concern and telling the suspected burglar to get rid of his clothing, and that the others should also get rid of their clothing. (*See* No. 3:19-CV-263-M-BH, doc. 16 at 53, 56-57.) Notwithstanding Movant's unsubstantiated and conclusory allegations to the contrary, the facts alleged in the affidavit are sufficient to establish probable cause given the totality of the circumstances.

Because Movant has failed to show that the search warrant was not supported by probable cause, much less that the magistrate judge who signed the search warrant abandoned her neutral and detached judicial role, and that the officers failed to act in good faith in executing the search warrant, he is not entitled to § 2255 relief on this claim.

**D.      Failure to Present Mitigation Evidence at Sentencing**

In his fourth ground, Movant argues that his counsel was ineffective for failing to present evidence to support his motion for a downward departure. (*See* No. 3:19-CV-263-M-BH, doc. 2 at 8, doc. 3 at 11-12.)

Movant appears to argue that if his counsel had produced evidence at his sentencing hearing to show that a defendant in a separate case, Perez, should have received a higher sentence, but did not because of the Government's actions in withholding evidence relating to enhancements, Movant would have received a downward departure and a lower sentence. (*See* doc. 2 at 8; doc. 3 at 6, 12, 18; doc. 16 at 18-22.) He claims that counsel failed to provide the Court with "numerous ATF Reports and an Arlington, Texas Police Department (APD) Incident Report" allegedly showing that Perez's relevant conduct for purposes of a PSR "consisted of (1) engaging in the

16

trafficking and sales of stolen firearms (U.S.S.G. § 2K2.1(b)(5)[)], (2) possession of firearms in connection with another felony offense, that being possession of a controlled substance (U.S.S.G. § 2K2.1(b)(6)(B)[)], and (3) obstructing justice by providing fictitious identification and information to law enforcement during a criminal investigation (U.S.S.G. § 3C1.1)." (doc. 3 at 12; *see also id.* at 28-41.)

At the continued sentencing hearing, Movant's counsel provided a Report of Investigation and Garland Police Department Incident/Investigation Report regarding the results of a search of a storage unit belonging to Perez as evidence to support his argument on disparate sentencing. (*See* doc. 68 at 4-7; doc. 69.) This evidence demonstrated that Perez's storage unit contained firearms, including over a dozen stolen during the burglary, illegal drugs, and stolen goods. (*See* doc. 69.) Movant's argument is contradicted by the record.

Even assuming for purposes of this motion only that counsel's performance was deficient for failing to submit additional law enforcement reports mentioning Perez's alleged relevant conduct as proposed by Movant, he has not shown prejudice. He has not demonstrated that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice."). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Moreover, conclusory allegations are insufficient to obtain relief. *Woods*, 870 F.2d at n.3; *Daniels*, 12 F. Supp. 2d at 575-76; *see also Miller*, 200 F.3d at 282.

At sentencing, the Court recognized that it is the Government's prerogative to make charging decisions, stating, "Once the Government makes charging decisions and they charge two

defendants differently, there is very likely to be a difference in their sentencing. I will take that into account in a general way, but I'm not going to sentence for a greater charge as if the Government brought a lesser charge." (doc. 68 at 8.) It noted hat Perez "couldn't have been charged with what [Movant] was being charged with, because of that criminal history that you did not know." (*Id.* at 18.) Unlike Movant, Perez's criminal history involved only misdemeanor offenses, so he could not be convicted of being a felon in possession of a firearm, which resulted in a base offense level significantly lower than Movant's. (*See id.* at 12, 16-18.)

Given the Court's assessment of the disparity between Movant's and Perez's criminal histories, and its express statement that it was "not going to sentence for a greater charge as if the Government brought a lesser charge," Movant has not shown that there was a reasonable probability that his sentence would have been less harsh if his counsel had submitted additional evidence to further support his sentence disparity arguments relating to Perez's conduct.[9] *See Glover*, 531 U.S. at 200. Accordingly, Movant has failed to show resulting prejudice under *Strickland*, and this claim should be denied.[10]

### IV.   EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court to "determine the proper course

---

[9] To the extent his claims may be liberally construed as alleging prosecutorial misconduct by withholding evidence to support additional enhancements to Perez's sentencing range under the Sentencing Guidelines, Movant has not offered any explanation for his failure to raise this issue on direct appeal, and he does not claim actual innocence of the offense of conviction. Any such claim is therefore procedurally barred. *See Shaid*, 937 F.2d at 232 (holding that a defendant may only attack a conviction on grounds of error omitted from the direct appeals upon showing 'cause' for the omission and 'actual prejudice' resulting from the asserted error). Even if it were not barred, Movant has failed to show that the Government is required to pursue all possible charges and enhancements against any defendant, and that its failure to do so constitutes a constitutional violation.

[10] Movant also asserts that had his counsel "complied with his duty to be an advocate for the defense during the Sentencing Hearing, he would have presented evidence confirming the claims that [Movant] had never spent one single day in the State of New York's Department of Corrections, that during the 4 years he was in custody," he was in a juvenile facility. (No. 3:19-CV-263-M-BH, doc. 16 at 7.) Even assuming for purposes of this motion that the failure to present any such evidence was deficient, Movant cannot establish prejudice for the same reasons already discussed in relation to his New York conviction.

to take with the 28 U.S.C. § 2255 Motion." (*See* 3:19-CV-263-M-BH, doc. 16 at 23.)

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (5th Cir. 2013) (citation omitted); *see Cervantes,* 132 F.3d at 1110 (noting that "[i]f the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing the issue.").

Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

### V. RECOMMENDATION

The movant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 1, 2019 (doc. 2), should be **DENIED** with prejudice.

**SIGNED this 4th day of March, 2021.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE